# UNITED STATES DISTRICT COURT

### for the

### Eastern District of Wisconsin

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| | ) | 22-M-609 |
| Jordan Lee PETERSON DOB XX-XX-87 | ) | |
| | ) | |
| | ) | |
| | ) | |
| _Defendant(s)_ | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____January 19, 2022_____ in the county of _____Brown_____ in the

_____Eastern_____ District of _____Wisconsin_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 841(a) and (b)(1)(B) and 846. | Conspire and attempt to possess with intent to distribute 50 grams or more of a mixture and substance containing methamphetamine. |

This criminal complaint is based on these facts:

See Attached affidavit

☑ Continued on the attached sheet.

_____
_Complainant's signature_

DEA TFO Joan A. Trofin
_Printed name and title_

Sworn to before me and signed in my presence.

Date: 1/26/2022

_____
_Judge's signature_

City and state: _____Green Bay, Wisconsin_____

Honorable James R. Sickel
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT & ARREST WARRANT

Ioan A Trofin, being first duly sworn, states that:

### Background

1. I am currently employed as a Trooper with the WI State Patrol and Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) - Green Bay Resident Office (GBRO) and have been so employed since October of 2011 and July of 2018 respectively. As a part of my current duties as a TFO with the DEA, I have received training and conducted investigations involving violations of federal controlled substances laws, firearms laws and money laundering laws (Title 21, United States Code, §§ 841(a) (1), 846, Title 18, United States Code, §§ 922, and 924 and Title 18, United States Code, §§ 1956 and 1957) and other related offenses.

### Basis for Information in Affidavit

2. The information contained in this affidavit is based upon my personal knowledge of this investigation and information supplied to me by other law enforcement officers, including Sheriff's Deputies with the Marinette and Oconto County Sheriff's Office, all of whom I believe to be truthful and reliable. I have probable cause to believe the following regarding Jordan Lee PETERSON, DOB ███-1987, Benjamin Kyle MALANCARA, DOB ███ 1986 and Julie Lynn STAMM, DOB ███-1975.

### Facts Establishing Probable Cause

3. On January 12, 2022, Investigator (Inv.) Erdman with Marinette County Sheriff's Office (MCSO) contacted me and requested assistance with a buy/bust operation involving methamphetamine from an individual later identified by law enforcement and post-arrest agreed to serve as a source of information (CS-1). CS-1 was arrested in Oconto County after he was found

1

in possession of approximately 27 grams of methamphetamine, .5 grams of heroin, and 29 grams of marijuana, drug paraphernalia, and other drug packaging equipment.

4. After the arrest of CS-1, an interview was conducted at the Oconto County Sheriff's Office (OCSO). During the interview CS-1 stated the following (in summary):

- Source of methamphetamine was Jordan PETERSON, also known as "Smiley". Law enforcement was able to identify PETERSON as Jordan L PETERSON (DOB ███1987).

- PETERSON lived in Greenleaf, WI by Saint Pats Church Road, next to a bar. Law enforcement was able to locate an address of ███████████ Greenleaf, WI 54126 (hereafter referred to as the Target Location) for PETERSON. An image of the address using Google maps was shown to CS-1 who confirmed the address was PETERSON's.

- Purchased the methamphetamine seized during the buy/bust operation from PETERSON.

- Purchased methamphetamine from PETERSON previously; the largest amount received from PETERSON being 2 ounces.

- Paid $450 for an ounce of methamphetamine from PETERSON.

- Last purchased methamphetamine from PETERSON on Saturday, January 8, 2022.

- PETERSON purchased the drugs off the dark web and got them delivered to his residence in Greenleaf.

- PETERSON was expecting a package to be delivered in the next couple of days.

- Communicated with PETERSON by telephone or text message, Facebook, and other chat apps. At that time, CS-1 provided consent to search his phone and showed law

2

enforcement communications between himself and PETERSON. During those conversations, PETERSON was utilizing telephone number (920) 489-7586 and a Facebook account with profile name "Jordan PETERSON".

5. Under law enforcement control and direction, CS-1 communicated with PETERSON about the methamphetamine as follows:

- On January 13, 2022, PETERSON messaged CS "Got the Bars on deck now" and "and we should be set for the weekend. For sure I'll have 4 but hopefully both hit by Saturday I'll have 10 then." The messages were shown to CS who stated that the term "Bars" was reference to Xanax and the "4" and "10" referring to packages of methamphetamine with weights of 4 and 10 ounces.

6. Under the direction of law enforcement, CS-1 messaged PETERSON and stated he wanted to purchase 4 ounces of methamphetamine. PETERSON responded initially saying there was a supply issue but that it was resolved.

7. On Friday, January 14, 2022, at 4:46 PM, PETERSON messaged CS-1 stating the package would be delivered on Tuesday. At 7:39 PM PETERSON messaged CS-1 and confirmed the delivery was on Tuesday. On Monday, January 17, 2022, at 2:03 PM, PETERSON messaged CS-1 stating "Hey buddy. That's tomorrow".

8. I contacted US Postal Inspector Matt Schmitz concerning the information obtained about PETERSON. Inspector Schmitz conducted a search of mail parcels for the Target Location and noticed that on January 17, 2022, two priority mail parcels sent by James Atkinson at █████ █████, Palm Desert, California were in-route to be delivered to Jordan Peterson at the Target Residence. Inspector Schmitz advised that these packages and the postage used to pay for

3

it were indicative of dark web purchases.

9. On January 18, 2022, a parcel addressed to Jordan PETERSON was intercepted by Inspector Schmitz. Inspector Schmitz received a federal search warrant to open the package. Inspector Schmitz discovered that the package contained a crystal-like substance that appeared to be methamphetamine. Inspector Schmitz weighed and field tested the suspected meth. The weight was 114.0 grams of methamphetamine. The field test was positive for the presence of methamphetamine.

10. I conducted a background check on Jordan L PETERSON. That check revealed that PETERSON's current address was the Target Residence. The search further revealed that PETERSON had several open Outagamie and Calumet Counties Criminal Cases. Wisconsin Circuit Court Access records showed a current address of the Target Residence.

11. On January 19, 2022, a controlled delivery of the package containing approximately 114 grams of suspected methamphetamine was made to the Target Residence.

12. Prior to the package being delivered, surveillance was established in the vicinity of the Target Residence. Surveillance observed a vehicle bearing MN plate CWV351 arrive and park in the driveway. A male passenger exited and checked the mailbox. The male returned to the vehicle and left the area.

13. At approximately 12:08 PM, Inspector Schmitz, acting as a mail carrier, delivered the package containing methamphetamine, with a portion of it removed, to the mailbox at the Target Residence.

14. Shortly after delivering the package, the same suspect vehicle arrived back at the Target Residence, stopped in front of the mailbox, and one of the occupants retrieved the package. The

4

vehicle then departed the area.

15. Based on the vehicle's occupant retrieving the package from the Target Residence, I followed the vehicle and shortly thereafter, initiated a traffic stop. Upon approaching the vehicle, I observed that the vehicle was occupied by a female driver and a male passenger. I observed the parcel containing the methamphetamine on the passenger floorboard. The passenger appeared to be in the process of opening the package.

16. The female driver was identified as Julie L STAMM, DOB ██████1975. The male passenger was identified as Benjamin Kyle MALACARA, DOB ██████1986. After a DOT check, it was determined that MALACARA had five felony warrants for his arrest.

17. As confirmation for the warrants was obtained, MALACARA made the following voluntary statement:

- He was sent to the Target Residence by "Jordan" (referring to PETERSON) to retrieve a parcel.

- When asked if he knew what was in the package, replied "drugs."

- PETERSON was waiting for him in Green Bay to deliver the package to him.

- He had agreed to pick up the package from the Target Location for monetary compensation.

- Observed PETERSON with additional methamphetamine on him and estimated the quantity to be six ounces. When asked how he knew it was six ounces, he stated that PETERSON told him.

18. A brief search of the vehicle was conducted. During the search, a glass jar was found in the glove box. The jar contained a brown substance identified by MALACARA as heroin. He stated

5

that both he and STAMM were heroin users. Additional items located during that search included approximately 225 Alprazolam pills, 118 Gabapentin pills, methamphetamine, and a mix of gold and silver coins.

19. After the traffic stop, MALACARA continued to assist law enforcement by attempting to locate PETERSON. MALACARA utilized his phone and messaged PETERSON inquiring about his current location. After a brief period, PETERSON answered stating that he was at ███ ██████████ in Green Bay and asked MALACARA to come and pick him up.

20. Later that afternoon, I was conducting surveillance near the intersection of Elmore Street and North Norwood Avenue. TFO Trofin observed a gray Honda travel north on N Norwood Ave and the male passenger in the backseat of the vehicle being PETERSON.

21. I followed the vehicle on Elmore Road. The vehicle signaled and turned in the driveway at ██████████ I initiated a traffic stop. I approached the rear seat passenger and ordered him to exit. The passenger complied. The passenger identified himself as Jordan Lee PETERSON. PETERSON was taken in custody.

22. Two other occupant were taken into custody as well. One of the occupants had tin cans with drug residue in them. A probable cause search of the car was conducted. In the back seat where PETERSON was sitting, I located a gray bag. Inside the bag were prescription bottles with PETERSON's name on them. Next to those pills, I located a scale, several baggies containing a crystalized substance that later field tested positive for methamphetamine and packaging material.

23. A post-arrest interview was conducted with MALACARA and STAMM. MALACARA waived his *Miranda* rights and agreed to speak with investigators. During that interview, in

6

summary, MALCARA stated the following:

- He and his girlfriend, STAMM, were asked by PETERSON to travel to the Target residence and obtain a package from the mailbox at that location.

- He knew the package contained drugs.

- PETERSON was involved with the distribution and sale of methamphetamine and other drugs.

- The small amount of methamphetamine found in the vehicle that he and STAMM were operating in was obtained from PETERSON.

- The large quantity of what appeared to be Xanax bars were obtained from PETERSON and that he was unsure if they were actual Xanax or fake pills containing Fentanyl.

- PETERSON told him of a prior package that PETERSON obtained the previous day and made mention to ten ounces of methamphetamine.

- PETERSON informed him of receiving six ounces the prior day.

- He was not involved with the parcel from the prior day and indicated that PETERSON picked up that package.

- Was offered $200 by PETERSON to pick up the parcel at the Target Residence.

- He agreed to pick up the parcel without receiving the $200 because PETERSON was going to help MALCARA and STAMM to secure a rental house in the Green Bay area.

24. STAMM waived her *Miranda* rights and agreed to speak with investigators. During that interview, in summary, STAMM stated the following:

- In reference to the drugs located in her vehicle, STAMM stated that the personal amounts of methamphetamine were MALCARA's being she did not enjoy methamphetamine,

7

indicating that she had an Opioid problem.

- She had a prescription for the Xanax medication, located in the car.

- The small rubber like containers with a cover contained heroin, although those items were not hers and believed they belonged to MALACARA or PETERSON.

- Regarding a package she was observed taking from PETERSON's mailbox, she stated that she was aware that PETERSON routinely received drugs (marijuana and methamphetamine) that were mailed to his residence and assumed that the package she retrieved from PETERSON's residence contained drugs.

- She was aware that PETERSON received drug packages through the mail.

- Regarding prior packages, she was aware that PETERSON had received a package a few days earlier and it could have been January 18th. When asked what was in the package, she was not sure but was aware it was like "6" packages. When asked if it was reference to "6" ounces of methamphetamine, she indicated that it could have been, indicating she never saw the package or contents.

- She had issues with Opioids and indicated that she did not like methamphetamine although she ingested a line of methamphetamine in the last couple of days.

- She had ingested heroin earlier in the day.

25. During questioning, STAMM gave consent to search her telephone and view text messages between her and PETERSON. Text messages from January 19, 2022, reveal the following:

- "Can you rent a car for the day for me? I'll pay for it. I just really don't want to take someone else's word that the carbs 100 legit. And I need to be mobile today and my guy won't have his wheels till later. I really want to get few zips busted off right the way and

8

get you your cash in hand so we can actually our next goal. We need a valid driver to do

it. Talk to Bennie so he is aware of it all please."

26.   Based on the foregoing, I believe there is probable cause to believe that PETERSON,

STAMM and MALACARA possessed with the intent to deliver methamphetamine in an amount

of 100 grams or more in violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(B).


Affiant Ioan A Trofin
Task Force Officer
Drug Enforcement Administration


Subscribed and sworn to before me
this _26_ day of _January_, 2022.

Notary Public
My commission expires: _____
   US MAgistrate Judge
   James R. Sickel